**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NIZAMUL HOUSSAIN**, *et al.*,

        Plaintiffs,

       v.                                         Case No.:  2:08-cv-956
                                                                 JUDGE SMITH
**SUNDOWNER OF OHIO**, *et al.*,                **Magistrate Judge Kemp**

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Protective Administrative Services, Inc.'s Motion to Dismiss Plaintiffs' Complaint.  Plaintiffs Nizamul and Darian Houssain (collectively "Plaintiffs") bring this action against Defendants Sundowner of Ohio, LLC ("Sundowner"), Equine Transportation Acceptance Company, LLC ("ETAC"), Citizens Automobile Finance, Inc. ("Citizens"), Brad Weber ("Weber"), James Hatfield ("Hatfield"), American General Bancassurance ("American General"), Protective Administrative Services, Inc. ("Protective"), and Hamilton Union Gap ("Hamilton") (collectively "Defendants").  Plaintiffs assert claims for fraud, fraudulent misrepresentation, forgery, failure to transfer title with sale, violations of the Consumer Sales Practices Act ("CSPA"), and punitive damages.  (Compl. at 7-10.).

Plaintiffs initiated this case on October 9, 2009.  Protective filed a Motion to Dismiss the Complaint on January 7, 2009 (Doc. 13), to which Plaintiffs responded on March 2, 2009 (Doc. 16).  For the reasons that follow, this Court **DENIES** Protective's Motion to Dismiss the Complaint as to Counts 1, 2, 3, 5, 6, and 7 and **GRANTS** the Motion as to Count 4.

Defendant Protective has also filed a Motion to Stay Discovery pending a ruling on their Motion to Dismiss (Doc. 25). In light of this Order granting in part and denying in part Defendant's Motion to Dismiss, Defendant's Motion to Stay Discovery is **DENIED**.

## I. FACTS

Not all the parties and claims are involved in this motion, therefore, the Court will focus only on those facts that are relevant to the claims against the moving party, Protective. On October 10, 2006, Plaintiffs attended the All-American Quarter-Hourse Congress ("Congress") in Columbus, Ohio and purchased a vehicle to haul their horse trailer (Compl. ¶¶ 5, 6). Defendant Sundowner operated a sales trailer at the Congress, where it displayed a 2007 Freightliner Sport M2106 ("Freightliner"). Plaintiffs were interested in the Freightliner because it had the capacity to haul their horse trailer. There was no "Monroney sticker" on the window of the Freightliner disclosing information such as the suggested retail price, the price for each accessory or optional equipment, and transportation charges as required by federal law. Plaintiffs negotiated with Weber, a Sundowner employee, and Hatfield, ETAC's director of finance, for the purchase of the Freightliner for $153,882.51.[1] Weber and Hatfield represented to the Houssains that the manufacturer's suggested retail price for the Freightliner was $192,830.00, however, the actual suggested retail price for the Freightliner was actually less than $130,000.00. (Compl. ¶¶ 9-12).

---

[1] This price reflected a claimed selling price of $192,830.00, plus $60.00 in fees, minus $1,077.49 net for the trade in of the 2006 GMC Topkick, and a rebate of $37,930.00, which was listed as a down payment by Weber.

In connection with the sale, Plaintiffs allege Weber and Hatfield discussed an XtraRide extended warranty[2] ("Warranty") that was available for $1,000 to $2,000, as well as other additional coverages such as GAP insurance, and disability and life insurance. However, no agreement was ever reached concerning the costs of these additional coverages or whether Plaintiffs would even purchase them. (Compl. ¶ 15).

Plaintiff signed what was represented to them to be a GAP insurance disclosure form with a written quote for possible GAP coverage through Hamilton Union GAP. Plaintiffs contend that written changes were made to this document after they signed the form, indicating a change in the identity of the lender, an increase in the amount financed, and an increase in the charge for the proposed GAP coverage. (Compl. ¶ 16).

After Plaintiffs left the Sundowner sales trailer, Plaintiffs allege that their signatures were forged on a Retail Installment Contract and Security Agreement ("RICSA") dated October 22, 2006, listing Citizens Automobile Finance as the lienholder. Plaintiffs allege the RICSA contains terms to which they never agreed, including: (1) that Plaintiffs purchased GAP protection for $13,820.00; (2) that Plaintiffs purchased an extended warranty for $18,305.00; (3) that Plaintiffs purchased a 120 month term joint life insurance policy for $11,703.39; (4) that Plaintiff Nizamul Houssain purchased an individual, 120 month term disability insurance policy for $4,370; and (5) that the length of the loan is 240 months. (Compl. ¶ 17).

Plaintiffs further allege that Defendants Citizens, American General, and Protective either actively participated in the fraudulent activities of Sundowner, ETAC, Hatfield, and

---

[2] Defendant Protective provided and administered the XtraRide extended warranty.

Weber, or were aware of such activities, or should have been aware and did not act to prevent these activities. (Compl. ¶ 21).

## II. STANDARD OF REVIEW FOR A MOTION TO DISMISS

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155. The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d

121, 124 (6th Cir. 1971); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007)[3]. A plaintiff's obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *See LULAC v. Bredesen*, 2007 U.S. App. LEXIS 20556 at *3-4 (6th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1964-65). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. *Id.*

## III. DISCUSSION

Defendant Protective has moved to dismiss Plaintiffs' Complaint on all counts against them. The Court will discuss each count in turn.

---

[3] In *Bell Atlantic Corp.*, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson*, providing that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

**A.      Plaintiffs' Fraud and Fraudulent Misrepresentation Claims (Counts One and Two)**

In its Motion to Dismiss, Defendant Protective argues that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard[4] should apply to Plaintiffs' Complaint because it "sounds in fraud." (Def.'s Mot. to Dismiss at 6). Protective contends that Plaintiffs' claims against it are premised on the same operative allegations in the accompanying fraud claims against the other Defendants; thus, the claims should be stated with particularity for each Defendant against whom fraud is alleged. Protective argues Plaintiffs' Complaint fails to meet this standard, because it lumps all Defendants into an indistinguishable group and does not offer any particularized facts with respect to each Defendant, including Protective.

On the other hand, Plaintiffs argue that Rule 9(b)'s pleading standard is inapplicable, because their claim against Protective is based on vicarious liability. (Pls' Memo. in Opp. at 5-6). Plaintiffs urge the Court to apply Federal Rule of Civil Procedure 8(a)'s pleading standard with respect to the claims against Defendant Protective because the Complaint contains specific allegations of fraud, forgery, and misrepresentations by the other Defendants, but is not necessary when alleging Protective is vicariously liable.

---

[4] Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to particularly state the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *Divine Tower Intern Corp. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 2007 WL 2572258, at *14 (S.D. Ohio 2007). To comply with Rule 9(b), the plaintiff must, at a minimum, allege the time, place, and content of the alleged misrepresentation on which he has relied; the fraudulent scheme; the defendant's fraudulent intent; and the injury resulting from the fraud. *Walburn v. Lockhead Corp.*, 431 F.3d 966, 972 (6th Cir. 2005). However, Rule 9(b) states that a complaint may *generally* state malice, intent, knowledge, and other conditions of a person's mind. Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard is not limited to claims of fraud, but also apples to "averments of fraud" or "claims that sound in fraud." *Ferron v. SubscriberBase Holdings, Inc*., 2009 WL 650731, at *5 (S.D.Ohio). Claims "sounding in fraud" are premised upon a fraudulent course of conduct. *Id.*

Despite asserting in their Complaint that Defendant Protective "actively participated" in the purported fraud, forgery, or other violations of law asserted against the other Defendant, Plaintiffs now assert in their Memorandum in Opposition to Defendant Protective's Motion to Dismiss that their claim against Protective is based on vicarious liability. (Doc. 16 at p. 5). While it appears that the fraud claim against Protective "sounds in fraud," because it is premised upon the fraud allegations against the other Defendants, a full review of the Complaint illustrates that Plaintiffs' claims against Protective are based solely on its derivative liability for the fraud of Weber and Hatfield. Therefore, if Plaintiffs have sufficiently plead vicarious liability, that should be sufficient to maintain the fraud claims against Defendant Protective. *See Marcelos v. Parada*, 2008 U.S. Dist. LEXIS 91155, *4-8 (N.D. Cal. July 18, 2008) (Plaintiff's allegation of an agency relationship was sufficient to maintain a fraud claim against the lender.).

A complaint relying on agency must plead facts that, if proved, could establish an agency relationship. *Bird v. Delacruz*, 411 F.Supp.2d 891 (S.D. Ohio 2005) (Frost, J.). It is insufficient to plead conclusory allegations of agency, and a plaintiff must allege *sufficient* facts that would amount to an agency relationship. *Id.* If an agency relationship is established, a principal is liable for any misrepresentations of his agent undertaken within the scope of the agency, whether or not the principal has knowledge of the fraud. *See Smith v. Brown*, 778 N.E.2d 490, 495 (Ind. App. 2002). In the context of an allegation of fraud, dismissal of a complaint is improper if the plaintiff adequately pleaded fraud as to a co-defendant, and then adequately pleaded an agency relationship between the defendant and the co-defendant. *Burgos v. Nannenga*, 2005 U.S. Dist. LEXIS 31147 (N.D. Ind. Dec. 5, 2005).

In the case at bar, we must construe the Complaint as a whole to determine whether it sufficiently alleges a claim for fraud based on vicarious liability against Protective. Plaintiffs' Complaint mentions Protective only once and alleges:

> Protective Administrative Services, Inc., the administrator for the XtraRide extended warranty, either actively participated in the fraudulent activities of Sundowner, ETAC, Hatfield, and Weber or were aware of such activities or should have been aware and did not act to prevent these activities.

(Compl. ¶ 21).

Plaintiffs also allege:

> During their discussions with Plaintiffs, Weber and Hatfield spoke with Plaintiffs about the possibility of also financing . . . an extended warranty. The estimates given by Weber and Hatfield during these negotiations were . . . between $1,000 to $2,000 for an extended warranty.

(Compl. ¶ 15).

Plaintiffs further allege:

> [T]he RICSA contains many terms and conditions to which Plaintiffs neither consented or agreed including: . . . (2) that Plaintiffs purchased an extended warranty for $18,305.00.

(Compl. ¶ 17).

Protective asserts the Complaint fails to put it on notice of the claims against it. Plaintiff, however, argues that Defendant has been adequately notified of the claims against it and the relationship need not be plead with particularity. Although the terms "vicarious," "derivative," "agency," or "principal" are not mentioned in the Complaint, the Complaint collectively alleges the following: Protective administered the warranty; Weber and Hatfield were authorized to sell the warranty for Protective; and Weber and Hatfield committed fraud by inserting terms into

RICSA to which Plaintiffs never agreed. In *Hernandez v. Hilltop Fin. Mortgage, Inc*., 2007 U.S. Dist. LEXIS 80867 (N.D. Cal. 2007), the Court held that

> It is not necessary for a pleading to allege an agency relationship in order to survive a Rule 12(b)(6) motion. As a matter of law, allegations of agency, vicarious liability, and/or respondeat superior are not required. A person legally responsible for an act may be alleged to have committed it without going into the theories which support the ultimate fact.

The Court therefore finds that Plaintiffs' allegations, although general, established that an agency relationship *could* have existed between Protective and both Weber and Hatfield. Additionally, the Complaint contains particular factual allegations regarding Weber and Hatfield's potential fraud. Therefore, Defendant Protective could potentially be held vicariously liable for their fraud. Therefore, Protective's Motion to Dismiss is **DENIED** as to Counts One and Two.

**B.      Forgery under O.R.C. § 2913.31 (Count Three)**

Defendant Protective argues that Plaintiffs' forgery claim does not state a claim against it because it is a criminal statute, and thus, cannot give rise to civil liability. (Def.'s Mot. to Dismiss at 12-13.) Also, Protective argues that Plaintiffs never alleged Protective had any involvement in the forging of Plaintiffs signatures.

Plaintiffs counter that if the civil claim can stand alone as a cognizable claim, then civil liability can arise from a criminal act. Additionally, Plaintiffs argue that their claims do not hinge exclusively on liability arising from violation of the forgery statute, but that they also pleaded claims for invasion of privacy and misappropriation of the name and likeness of another.

Ohio Revised Code § 2307.60(A) provides in pertinent part:

> Anyone injured in person or property by a criminal act has, and may recover full damages in a civil action, unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

O.R.C. § 2913.31 is a criminal statutory provision that provides, in pertinent part, that forgery is committed when a person possesses, with intent to utter, any writing that person knows to be false. O.R.C. § 2913.31(A)(3).

The general common law tort of invasion of privacy encompasses forgery. *See James v. Bob Ross Buick, Inc*., 167 Ohio App.3d 338, 342 (2d Dist. 2006). The tort of invasion of privacy includes four separate torts: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Id.* Specifically, forgery amounts to the appropriation of the name or likeness of another. *Id*. Ohio has adopted the tort of misappropriation of the name or likeness of another as propounded in the Restatement. *Id*. Although the most common form involves appropriation to advertise a business or a product, it also includes situations in which the defendant uses a plaintiff's name for his own purpose or benefit. Rest. 2d Torts 652C, comment A.

In the case at bar, Plaintiffs' Complaint sufficiently alleges an invasion of privacy claim against Protective. As stated above, Plaintiffs' Complaint alleges that Protective administered the extended warranty at issue. As administrator, Defendant Protective allegedly used Plaintiffs'

forged signatures for its purpose and benefit. Therefore, Protective's Motion to Dismiss is **DENIED** as to Count Three.

C.      **Failure to Transfer Title with Sale under O.R.C. § 4505.03 (Count Four)**

The Complaint alleges that Plaintiffs purchased the Freightliner at issue from Sundowner and were not provided with an original title. Ohio Revised Code § 4505.03 provides that no one shall sell a vehicle without delivering title with an assignment to the buyer. The Complaint, however, does not allege any allegations against Defendant Protective with respect to the title of the Freightliner. Therefore, Protective's Motion to Dismiss is **GRANTED** as to Count Four.

D.      **Violations of the Consumer Sales Practices Act (Count Five)**

Finally, Defendant Protective argues that Plaintiffs' CSPA claim is insufficient because they fail to allege facts to prove Protective is a supplier as defined by Ohio Revised Code § 1345.01(C). Defendant Protective also argues that there are no allegations against them giving rise to a claim under the CSPA. Plaintiffs generally allege that:

> Defendants committed unfair and deceptive acts and practices in connection with the aforementioned consumer transaction in violation of Ohio Rev. Code § 1345.02 including, but not limited to: (1) forging Plaintiffs' signatures on contracts and other financial documents; (2) attempting to increase the cost of the Freightliner by approximately $50,000 in extra charges to which Plaintiffs never agreed; (2) attempting to charged [sic] exorbitant amounts for GAP insurance, life insurance, disability insurance, and an extended warranty that was well above oral quotes given to the Plaintiffs; (3) failing to integrate into the sales agreement all material statements, representations and promises made prior to that agreement; (4) failing to provide the title to the Freightliner until January 2007; (5) altering the purchase agreement and attempting to incorporate terms into the agreement that were not included within the original contract; (6) the fraudulent misrepresentations and misleading sales tactics of Weber and Hatfield concerning the price of the Freightliner; (7) the lack of the required window sticker; and (8) the false use of the term "manufacturer's suggested retail price."

(Compl. ¶ 36).

"In order to make out a claim of unfair or deceptive acts, a supplier must commit the act or practice in connection with a consumer transaction." *Ferron v. Zoomego*, 2007 U.S. Dist. LEXIS 48292, at *9-10 (S.D. Ohio July 3, 2007). A supplier is defined as a "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." O.R.C. § 1345.01(C). Consumer transaction is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family or household, or solicitations to supply any of these things. O.R.C. § 1345.01(A).

Defendant Protective argues that not only is it not a supplier, but that it does not have any relationship with Plaintiffs. It further argues that Defendant Protective is the administrator of a third-party warranty outlined in the allegedly forged documents, but this does not demonstrate that Protective and Plaintiffs were parties to a consumer transaction.

Plaintiffs again argue that Defendant Protective is derivatively liable for the actions of Weber, Hatfield, Sundowner, and ETAC. Plaintiffs rely on *Milchen v. Bob Morris Pontiac*, 113 Ohio App.3d 190 (9th Dist. 1996). In *Milchen*, Plaintiff brought a CSPA claim against Defendant dealer and Bank One, the lender, when the dealer fraudulently obtained his signatures on documents that resulted in his purchase of a vehicle. The court denied the lender, Bank One's motion to dismiss finding that the lender could be held liable under a theory of derivative liability. The court held that "while Bank One may not be subject to the CSPA for its own actions toward Appellant, it agreed to be derivatively liable for the dealer's violations of the CSPA when it accepted the terms of the contract." *Id.* at 197.

Accordingly, Defendant Protective could be held derivatively liable for the alleged violations of the CSPA by Weber, Hatfield, Sundowner, and ETAC. Therefore, Defendant's Motion to Dismiss Count Five is **DENIED**.

## IV. DISPOSITION

Based on the foregoing, Defendant Protective's Motion to Dismiss is **DENIED** as to Counts 1, 2, 3, 5, 6, and 7 of the Complaint, and **GRANTED** as to Count 4. Also, Defendant's Motion to Stay is **DENIED**.

The Clerk shall remove Documents 13 and 25 from the Court's pending motions list.

**IT IS SO ORDERED.**

    */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**